Diana NIETO and Maribel Gonzalez, Administrator of the Estate of Irma Nava, Appellants–Defendants/Cross Plaintiffs,

v.

Amy KEZY, Appellee–Plaintiff,

and

Walter H. Swets, Appellee–Defendant/Cross–Defendant.

No. 45A03–0507–CV–330.

Court of Appeals of Indiana.

April 27, 2006.

Charles R. Deible, Ellen R. Klausen, Gambs Mucker & Bauman, Lafayette, for Appellants.

John T. Casey, Rensselaer, Attorney for Amy Kezy.

Kenneth A. Manning, Dyer, Attorney for Walter Swets.

## OPINION

SHARPNACK, Judge.

Diana Nieto and Maribel Gonzalez, administrator of the Estate of Irma Nava,

(collectively "Nava"), appeal the trial court's judgment in favor of Amy Kezy and Walter H. Swets. Nava raises thirteen issues, which we consolidate and restate as:

I. Whether the trial court's findings of fact and conclusions thereon regarding Swets's payment of the real estate taxes on Nava's property are clearly erroneous;

II. Whether the trial court's findings of fact and conclusions thereon regarding the placement of Nava's property on the July 1997 delinquent property tax list are clearly erroneous; and

III. Whether the trial court's findings of fact and conclusions thereon regarding the validity of Kezy's tax deed are clearly erroneous.

We affirm in part, reverse in part, and remand.[1]

The relevant facts follow. Swets owned property ("Property") in Lake County with a legal description of:

The East 90 feet of Lots 23 and 24 in Block 4 in Turner's First Addition to the City of Hammond as per plat thereof, recorded December 16, 1908, in Plat Book 7, Page 31, in the Office of the Recorder of Lake County, Indiana.

Key No. 36–244–29

Commonly known as 5752 Erie Street, Hammond, Indiana 46320.

Appellant's Appendix at 210. Swets had a mortgage and escrow account for the payment of real estate taxes on the Property, and Calumet Securities Corporation, his

---

1. The transcript of the bench trial was not submitted with this appeal; however, a copy of the entire transcript appears in Appellant's Appendix. The confusion likely stems from the fact that a prior appeal of this matter was dismissed and a transcript of the bench trial was submitted in that cause. *See Gonzalez v.* *Kezy,* 816 N.E.2d 1203, No. 45A03–0401–CV–36 (Ind.Ct.App. Oct. 7, 2004). Rather than copy the entire transcript in the appendix, Nava should have filed a motion with this court to transfer the transcript from the prior appeal to this appeal.

mortgage company, paid the real estate taxes.

1. *Nava's Purchase of the Property.*

On May 31, 1996, Swets entered into a "Contract for Conditional Sale of Real Estate" with Irma Nava regarding the Property. Swets agreed to sell the Property to Nava for $14,000. Nava was to pay $4,000 as a down payment and $1,000 per month for ten months. The contract also provided the following:

> Taxes. Buyer agrees to assume and pay the taxes on the Real Estate beginning with the installment payable _____, 1996, together with all installments of real estate taxes due and payable thereafter and Seller agrees to pay all taxes on the Real Estate due prior to said installment. . . . Seller shall forward or cause to be forwarded to Buyer, when received, a copy of all statements for taxes and any assessments on the Real Estate which are payable by Buyer hereunder; and Buyer shall provide to Seller, upon request, evidence of payment of such taxes and assessments.

*Id.* at 203. Nava took possession of the Property upon executing the contract and paying the down payment. Neither party recorded the contract with the Lake County Recorder's Office.

On August 8, 1996, Swets and Nava, through Nava's boyfriend, Santiago Nieto, modified their agreement, and Swets reduced the total purchase price to $11,000 in return for a lump sum payment by Nava to Swets of $7,000. The parties executed a "Closing Statement," in which the parties marked out provisions for the payment of the balance due in $1,000 monthly payments and modified the purchase price to

reflect a $7,000 payment and a purchase price of $11,000. The Closing Statement also provided:

> The parties agree that the Seller will pay all real estate taxes through the first installment of 1996 taxes payable in 1997 and the Purchaser will pay the second installment of 1996 real estate taxes payable in 1997 and all subsequent taxes. There will be no other proration of taxes.

*Id.* at 207. Swets paid off his mortgage, and Calumet Securities issued a "Satisfaction of Mortgage" dated August 15, 1996, which was recorded with the Lake County Recorder's Office on September 17, 1996.

In January 1997, Swets executed a deed transferring the Property to Nava, but Swets's signature was not notarized. The deed provided: "This conveyance is specifically subject to general taxes for the second installment of the year 1996 and subsequent." *Id.* at 209. Nava filed the deed with her other important papers and did not attempt to have it recorded at that time. Nava also did not pay any real estate taxes. Nava had improvements made to the Property and started renting it.

In early 1999, Nava's income tax preparer advised her that she needed to record the deed and pay real estate taxes. Nava attempted to record the deed given to her by Swets, but the Recorder's Office would not accept it because Swets's signature was not notarized. Nava hired an attorney to prepare a new deed, which Swets signed before a notary on March 6, 1999. Nava recorded the new deed with the Lake County Recorder's Office on April 6, 1999, and paid $931.49 in real estate taxes, which included $298.91 in taxes that were due on May 10, 1999, and $632.58 in taxes that were delinquent.[2]

---

**2.** The exhibit does not indicate which delinquent installments were included in this amount.

2. *Kezy's Purchase of the Property at the Tax Sale.*

Generally, real estate taxes are paid the year following their accrual in two installments on May 10 and November 10 each year, i.e., 1995 taxes payable in 1996. However, due to a statewide reassessment and computer change, the May 10th installment of taxes due in 1995 but payable in 1996 was not due until October 10, 1996. The November installment was still due on November 10, 1996. The October 1996 tax bill was sent to Swets's address in South Holland, Illinois, which was the address on file with the Lake County Auditor, but he had moved to Valparaiso, Indiana in July 1994. Swets did not give notice of his change of address to the Lake County Auditor or Treasurer.[3] Neither Swets nor Nava paid the October 1996, November 1996, or the May 1997 tax bills.

On July 1, 1997, the Lake County Treasurer placed the Property on its Delinquent List, and Kezy purchased the Property at a tax sale on September 19, 1997, for $1,353.41. Kezy received a Tax Sale Certificate that listed Swets as the Property's owner. The Tax Sale Certificate described the Property as:

26–36–0244–0029

TURNER'S 1ST ADD.

E.90FT. L.23 BL.4

E.90FT. L.24 BL.4

Appellant's Appendix at 189. Kezy then attempted to drive past the Property but transposed the numbers and drove past 5725 Erie rather than 5752 Erie. Kezy obtained title work on the Property, which also listed Swets as the Property's owner. Because she had failed to record the deed, Nava's name did not appear on the title work.

On July 13, 1998, Kezy's attorney attempted to serve a "Notice of Tax Sale and Redemption Period Expiration Date" upon Swets by mailing notices to two addresses in South Holland, Illinois. The envelopes were returned to the attorney, one marked "forwarding order expired" and the other marked "ANK" (addressee not known). *Id.* at 194. Kezy's attorney also performed a Yahoo internet search to find Swets, but the search did not reveal a current address for Swets. Neither Kezy nor her attorney sent notice to Nava or the occupant of the Property at its common address. Kezy's attorney then published the "Notice of Tax Sale and Redemption Period Expiration Date" in the Crown Point Star on July 23, 1998, July 30, 1998, and August 6, 1998. The Notice was addressed to "Walter J. Swets, Sam Orlich, Lake County Auditor, Any Other Person Or Entity Claiming An Interest" and listed the description of the Property as "26–36–0244–0029 E.90FT L23 BL 4 E.90FT L24 BL.4." *Id.* at 193. Neither Nava nor Swets redeemed the Property. On December 30, 1998, Kezy filed a petition to issue a tax deed. Kezy did not mail notice of the petition to the occupant of the Property.

In February 1999, near the time that Nava's tax preparer advised her to record her deed, Kezy obtained another title search, which again did not indicate that Nava had any interest in the Property. A short time later, Kezy drove past the correct Property and saw cars in the driveway. Approximately one week later, on March 19, 1999, the trial court granted the petition and ordered the Lake County Auditor to issue a tax deed to Kezy. On April 6, 1999, the same day that Nava recorded her deed from Swets, the Lake County

---

**3.** "Indiana caselaw has for some time held the property owner accountable for ensuring that official property records reflect a correct address." *Tax Certificate Investments, Inc. v. Smethers,* 714 N.E.2d 131, 134 (Ind.1999).

Auditor issued a tax deed to Kezy. Kezy recorded the tax deed on April 12, 1999, and learned that the Property was in Nava's name.

### 3. Kezy's Action to Quiet Title & Nava's Cross–Claim against Swets.

Nava filed an appeal to defeat Kezy's tax deed, and on June 11, 1999, Kezy filed a complaint against Swets and Nava to quiet title to the Property. On September 9, 1999, Nava answered and filed a cross-claim against Swets, alleging that Swets failed to timely provide a notarized deed for recordation and failed to forward tax bills to Nava. On April 8, 2002, Nava died, leaving her daughter, Nieto, as her sole heir. Gonzales, as the Personal Representative of Nava's Estate, and Nieto were substituted as Defendants/Cross Claimants.

After a bench trial, the trial court entered findings of fact and conclusions thereon on December 19, 2003, finding that Kezy followed the statutory requirements for obtaining a tax deed and that Kezy was the "legal fee title holder to the Erie Property, free and clear of any right, title, or interest of Swets and Nava." *Id.* at 25. The trial court did not rule upon the cross-claim of the Estate against Swets.[4] Nava appealed the judgment to this court, and in a memorandum opinion, we held that we did not have jurisdiction to hear the appeal because the trial court did not resolve Nava's cross-claim against Swets and the trial court's order was interlocutory, not final. *Gonzalez v. Kezy*, 816 N.E.2d 1203, No. 45A03–0401–CV–36, slip op. at 7 (Ind. Ct.App. Oct. 7, 2004). Because the trial court had not certified the order pursuant to Ind. Trial Rule 54(B), we concluded that

we did not have jurisdiction and dismissed Nava's appeal. *Id.*

Nava then filed a motion with the trial court to enter final judgment on all claims of the parties. On January 26, 2005, the trial court entered findings of fact and conclusions thereon regarding Nava's cross-claim against Swets. The trial court found that: (1) Swets and Nava made an oral modification to their agreement such that Nava was responsible for the real estate taxes; (2) Nava was "estopped to assert any claim against [Swets] for payment, or reimbursement of real estate taxes" on the Property because of prejudice resulting from her delay in recording the deed; and (3) Nava "wholly failed to present any evidence as to the amount or extent of her alleged loss and damages." Appellant's Appendix at 492, 494. The trial court ordered that Nava "take nothing by way of her Cross Claim against [Swets]." *Id.* at 494. Nava now appeals the judgment for Kezy on her complaint and the judgment for Swets on Nava's cross-claim.

▆▆▆▆ The trial court entered findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. *Menard, Inc. v. Dage–MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind.2000), *reh'g denied.* In our review, we first consider whether the evidence supports the factual findings. *Id.* Second, we consider whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind.1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. *Menard*, 726 N.E.2d

---

4. On February 24, 2004, the Property was purchased by the City of Hammond for a new school bus transportation and storage facility. $65,438.56 was deposited with the Lake County Clerk pending resolution of this matter.

at 1210. We give due regard to the trial court's ability to assess the credibility of witnesses. *Id.* While we defer substantially to findings of fact, we do not do so to conclusions of law. *Id.* We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Yoon v. Yoon,* 711 N.E.2d 1265, 1268 (Ind.1999).

## I.

The first issue is whether the trial court's findings of fact and conclusions thereon regarding Swets's payment of the real estate tax installments on Nava's property are clearly erroneous. Nava makes numerous arguments regarding Swets's obligation to pay the October and November 1996 real estate taxes, including: (1) the Closing Statement required Swets to pay the taxes; (2) the statute of frauds prevented the oral modification of the Closing Statement; (3) the Dead Man's Statute prevented the oral modification of the Closing Statement; and (4) Santiago was not Nava's agent and could not modify the parties' agreement. In response, Swets argues that: (1) the parties orally modified the agreement and Swets was not responsible for the taxes; (2) Nava waived any objection to Swets's testimony regarding the oral modification of the agreement; (3) the Closing Agreement could be orally modified; (4) Nava waived any argument regarding the Dead Man's Statute; (5) Santiago was Nava's agent; and (6) Nava's appeal fails because she did not appeal the trial court's findings and conclusions that she did not prove causation or damages.

 We need not address Nava's arguments regarding whether she or Swets was required to pay the real estate taxes because we conclude that the trial court's findings of fact and conclusions thereon regarding her failure to prove damages are not clearly erroneous. Nava's claim against Swets was in essence a breach of contract claim. "The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages." *Rogier v. American Testing and Engineering Corp.,* 734 N.E.2d 606, 614 (Ind.Ct.App.2000), *reh'g denied, trans. denied.* In addition to making findings regarding Swets's breach, the trial court found:

It is axiomatic that a party breaching his contract obligations is liable only for losses proximately caused by that breach. To succeed in her breach of contract cross claim against Swets, Nava bears the burden of showing the alleged breach was a cause, in fact, of her loss. And the non-breaching party, as Nava alleges in her cross claim, must act under the contract in a way that does not aggravate or increase her damages and loss.

And, the damages and loss proffered by Nava must be within the scope of the evidence before the Court. Nava must prove with reasonable certainty the nature and extent of her damages.

Nava wholly failed to present any evidence as to the amount or extent of her alleged loss and damages. Her testimony does refer to repairs and improvements made to the Erie Street Property, but there is no evidence as to the actual amount expended. There is no evidence as to the value of the property, other than the contract price. She was, however, obligated to pay this amount, and such amount is not a loss she sustained as to the result of any alleged breach. Finally, there is no evidence before the court as to the amount of the 1995 pay 1996 and first installment of the 1996 pay 1997 real estate taxes. The Tax Sale Certificate does not accurately re-

flect these amounts. Under Indiana law, the Tax Sale Certificate amount includes real estate taxes that clearly are the obligation of Irma Nava under any interpretation of the contract, even as modified. Even these taxes (ie 2nd installment of 1996 pay 1997) were not paid timely. Even if the Court were to assume Swets' [sic] remains obligated to pay 1995 in 1996 and the first installment of 1996 in 1997 real estate taxes, the amount of these taxes remains conjecture and a "guess."

Nava's cross claim against Swets fails, notwithstanding any other consideration, due to a total lack of evidence of substainable [sic] damages caused by any alleged breach.

Appellant's Appendix at 491–493.

In his Appellee's Brief, Swets argues that Nava failed to appeal the trial court's findings of fact and conclusions thereon regarding her damages. We note that Nava makes an extremely brief argument in her Appellant's Brief that she presented sufficient evidence regarding damages. *See* Appellant's Brief at 38–39. Nava contends that she presented evidence regarding the fair market value of the Property based upon the City of Hammond's purchase of the Property. However, this purchase occurred months after the bench trial of this matter. There is no indication in the record that Nava supplemented her evidence to include the fair market value of the Property. Consequently, this evidence was not properly before the trial court for consideration as damages.

Nava also argues that she presented evidence during the bench trial regarding rent that she received for the Property.

However, Nava does not explain how the rent that she received relates to damages that she incurred as a result of Swets's failure to pay the real estate taxes, and her argument is waived. *See, e.g., Bergman v. Knox County Office of Family & Children,* 750 N.E.2d 809, 811 (Ind.Ct.App.2001) (holding that the mother waived an issue by failing to present a cogent argument).

Lastly, Nava argues that evidence was presented regarding the amount of real estate taxes that were owed by Swets.[5] However, the following is the extent of Nava's argument: "Nava contends that Kezy's tax sale bid of $1,353.41 and her Tax Sale Certificate for $1,353.41 are evidence of the real estate taxes, penalties and interest for the two installments due in 1996 and the first installment due in 1997." Appellant's Appendix at 39. Our review of the record reveals that the only evidence presented at the trial regarding the delinquent taxes was that Kezy purchased the Property at the tax sale for $1,353.41. Nava's argument is simply insufficient to establish that the trial court's findings of fact and conclusions thereon regarding the damages are clearly erroneous. *See, e.g., Bergman,* 750 N.E.2d at 811 (holding that the mother waived an issue by failing to present a cogent argument).

■ "It is the duty of this court to sustain the decision of the trial court on any theory supported by the evidence." *Montgomery Ward & Co., Inc. v. Tackett,* 163 Ind.App. 211, 219, 323 N.E.2d 242, 247 (1975). Even if Swets breached his agreement with Nava, Nava has failed to demonstrate that the trial court's findings of fact and conclusions thereon regarding her

---

5. Nava also argues that "her April 9, 1999 tax receipt establishes the exact amount of real estate taxes due at each installment for the Erie Property, $298.91." Appellant's Brief at 39. Nava cites no authority for the proposition that the May 1999 tax installment would have been the same amount as the taxes due in 1996 and 1997 and has failed to show that the trial court's findings of fact and conclusions thereon are clearly erroneous.

failure to prove damages is clearly erroneous. Consequently, her claim against Swets fails, and the trial court's judgment in favor of Swets on Nava's cross claim is not clearly erroneous.

## II.

The next issue is whether the trial court's findings of fact and conclusions thereon regarding the placement of Nava's property on the July 1997 delinquent property tax list are clearly erroneous. The trial court found that "the Lake County Auditor received an Order in 1996 allowing the Spring installment to be due and payable on or before October 10, 1996." Appellant's Appendix at 20. The trial court concluded that "since neither Swets nor Nava paid the 1996 Spring installment, due and payable on or before October 10, 1996, on the Erie Property, the Erie Property was correctly added to the delinquent list as defined by I.C. 6–1.1–24–1." *Id.* Nava argues that the Property was improperly added to the July 1997 delinquent list because there was no "spring installment" of taxes due in 1996.

 Resolution of this issue requires that we interpret Indiana's real estate taxation and collection statutes. When interpreting a statute, we independently review a statute's meaning and apply it to the facts of the case under review. *Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind.2002). Thus, we need not defer to a trial court's interpretation of the statute's meaning. *Elmer Buchta Trucking, Inc. v. Stanley,* 744 N.E.2d 939, 942 (Ind.2001). "The first step in interpreting any Indiana statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question." *St. Vincent*

*Hosp. and Health Care Center, Inc. v. Steele,* 766 N.E.2d 699, 703–704 (Ind.2002). If a statute is unambiguous, we must give the statute its clear and plain meaning. *Bolin,* 764 N.E.2d at 204. A statute is unambiguous if it is not susceptible to more than one interpretation. *Elmer Buchta Trucking,* 744 N.E.2d at 942. However, if a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Bolin,* 764 N.E.2d at 204. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Id.*

 In general, the property taxes assessed for a year "are due in two (2) equal installments on May 10 and November 10 of the following year." Ind.Code § 6–1.1–22–9(a).[6] At the time that Swets and Nava failed to pay the taxes, Ind.Code § 6–1.1–24–1 [7] provided:

(a) On or before July 1 of each year, the county treasurer shall certify to the county auditor a list of real property on which any of the following exist:

(1) Any property taxes or special assessments certified to the county auditor for collection by the county treasurer from the prior year's spring installment or before are delinquent as determined under IC 6–1.1–37–10.

(2) Any unpaid costs are due under section 2(b) of this chapter from a prior tax sale.

(b) The county auditor shall maintain a list of all real property eligible for sale. Unless the taxpayer pays to the county treasurer the amounts in sub-

---

6. Subsequently amended by Pub.L. No. 1–2004, § 35 (eff. Dec. 12, 2003) and Pub.L. No. 23–2004, § 38 (eff. Mar. 16, 2004).

7. Subsequently amended by Pub.L. No. 139–2001, § 1 (eff. July 1, 2001).

section (a), the taxpayer's property shall remain on the list.

(c) Except as otherwise provided in this chapter, the real property so listed is eligible for sale in the manner prescribed in this chapter.

Ind.Code § 6–1.1–37–10(a) [8] provided at that time:

If an installment of property taxes is not completely paid on or before the due date, a penalty equal to ten percent (10%) of the amount of delinquent taxes shall be added to the unpaid portion in the year of the initial delinquency. On May 10 and November 10 of each year following the year of the initial delinquency, an additional penalty equal to ten percent (10%) of any taxes remaining unpaid shall be added. These penalties are imposed only on the principal amount of the delinquent taxes. However, *if the state board of tax commissioners determines that an emergency has occurred which precludes the mailing of the tax statement in any county at the time set forth in IC 6–1.1–22–8, the board shall establish by order a new date on which the installment of taxes in that county is due and no installment is delinquent if paid by the date so established.*

(emphasis added). According to Nava, Ind.Code § 6–1.1–24–1 concerns the "spring installment" of taxes, and there was no spring installment of taxes due in 1996. Thus, Nava argues that the Property could not have been placed on the delinquent list on July 1, 1997.[9]

 The Lake County Treasurer testified that due to a reassessment and statewide computer change they received an order from the State Board of Tax Commissioners allowing them to send the tax bills out in September 1996 rather than late March or early April 1996.[10] Thus, the tax installment normally due on May 10, 1996, was due on October 10, 1996. Nava presented no evidence demonstrating that the July 1, 1997, date for certifying the delinquent list was also changed.

Even though Ind.Code § 6–1.1–24–1, which requires the compilation of the July 1 delinquent list, concerns the "spring installment," it is clear that this phrase refers to the May 10th installment payment. Ind.Code § 6–1.1–37–10(a) allowed the State Board of Tax Commissioners [11] to establish by order a new date on which an installment of taxes was due. The State Board of Tax Commissioners did so by extending the deadline for payment of the May 10, 1996, installment to October 10,

8. Subsequently amended by Pub.L. No. 154–1999, § 1 (eff. July 1, 1999); Pub.L. No. 90–2002, § 262 (eff. July 1, 2002); Pub.L. No. 1–2004, § 46 (eff.Dec. 12, 2003); and Pub.L. No. 23–2004, § 49 (eff.Mar. 16, 2004).

9. Nava also argues that she was denied her rights to equal protection because: (1) during a normal year, taxes are delinquent for fourteen months before being placed on a delinquent list and her property was placed on the delinquent list after only eight months; and (2) if 1996 had been a normal year, Swets would have paid the taxes in May 1996, prior to her purchase of the Property. However, Nava cites absolutely no authority for her argument. To the extent that Nava's use of the term "equal protection" could be con-

strued as an attempt to raise a constitutional claim, we find the argument waived because of her failure to make a cogent constitutional argument or cite appropriate authority. *Carter v. Knox County Office of Family & Children,* 761 N.E.2d 431, 440 (Ind.Ct.App.2001) (holding that the mother waived her constitutional argument by failing to make a cogent argument or cite appropriate authority).

10. The order from the State Board of Tax Commissioners was not introduced into evidence.

11. Now the Indiana Department of Local Government Finance. *See* Pub.L. No. 198–2001 (eff. July 1, 2001).

1996. The evidence presented at the hearing indicates that the State Board of Tax Commissioners merely moved the payment deadline; it did not eliminate the installment altogether. However, the statutory requirement for compiling the July 1, 1997, delinquent list was unchanged. Consequently, pursuant to Ind.Code § 6–1.1–24–1, the Lake County Treasurer was still required to certify a list of properties in July 1997 that had delinquent taxes from the prior year's spring installment, which had been due on October 10, 1996, as a result of the State Board of Tax Commissioners' order. We cannot say that the trial court's findings of fact and conclusions thereon regarding the placement of the Property on the delinquent list in July 1997 are clearly erroneous.

### III.

■■■ The next issue is whether the trial court's findings of fact and conclusions thereon regarding the validity of Kezy's tax deed are clearly erroneous. A tax sale is purely a statutory creation, and material compliance with each step of the statute is required. *Porter v. Bankers Trust Co. of California, N.A.*, 773 N.E.2d 901, 906 (Ind.Ct.App.2002). While a tax deed creates a presumption that a tax sale and all of the steps leading to the issuance of the tax deed are proper, this presumption may be rebutted by affirmative evidence to the contrary. *Id.*

The Indiana Supreme Court summarized the procedures for obtaining a tax deed in *Tax Certificate Investments, Inc. v. Smethers:*

A purchaser of Indiana real property that is sold for delinquent taxes initially receives a certificate of sale. A one-year redemption period ensues. If the owners fail to redeem the property during that year, a purchaser who has complied

with the statutory requirements is entitled to a tax deed. The property owner and any person with a "substantial property interest of public record" must each be given two notices.

The first notice announces the fact of the sale, the date the redemption period will expire, and the date on or after which a tax deed petition will be filed [i.e., redemption notice]. The second notice announces that the purchaser has petitioned for a tax deed [i.e., notice of petition for tax deed].

714 N.E.2d 131, 133 (Ind.1999) (internal citations omitted).

Under Ind.Code § 6–1.1–25–16 [12], a tax deed may be defeated if:

(1) the tract or real property described in the deed was not subject to the taxes for which it was sold;

(2) the delinquent taxes or special assessments for which the tract or real property was sold were paid before the sale;

(3) the tract or real property was not assessed for the taxes and special assessments for which it was sold;

(4) the tract or real property was redeemed before the expiration of the period of redemption (as specified in section 4 of this chapter);

(5) the proper county officers issued a certificate, within the time limited by law for paying taxes or for redeeming the tract or real property, which states either that no taxes were due at the time the sale was made or that the tract or real property was not subject to taxation;

(6) the description of the tract or real property was so imperfect as to fail to describe it with reasonable certainty; or

**12.** Subsequently amended by Pub.L. No. 139– 2001, § 27 (eff. July 1, 2001).

(7) the notices required by IC 6–1.1–24–4, and sections 4.5 and 4.6 of this chapter were not in substantial compliance with the manner prescribed in those sections.

Nava argues that Kezy's tax deed should be defeated because: (A) Kezy's notices contained an incomplete address of the Property that was so imperfect as to fail to describe the Property with reasonable certainty; (B) the redemption notice was sent too early and was not in substantial compliance with the statutes; and (C) Kezy did not use due diligence in locating Swets and, thus, was not in substantial compliance with the statutes. Because we resolve this issue on the basis of the Property description used in Kezy's notice, we need not address the other issues that Nava raises.

■ Before addressing the Property description used in Kezy's notice, we must address Kezy's argument that Nava does not have standing to contest the content of the notices because Nava was not a person entitled to receive the statutory notices. We have previously addressed this issue and reached a contrary result. *See, e.g.,* *Porter,* 773 N.E.2d at 905 ("Even though the assignment of the mortgage from Cityscape to Greenwich was not recorded, and Greenwich is not entitled to notice under the tax sale statutes, Greenwich nevertheless has standing to assert any and all rights of Cityscape as the assignee.").

Moreover, Ind.Code § 6–1.1–25–4.5(a) [13] required that the redemption notice be sent to "the owner and any person with a substantial property interest of public record in the tract or real property." While Nava does not argue that she was entitled to receive the notices, we note that Ind. Code § 6–1.1–25–4.6(a) [14] allows "[a]ny person owning or having an interest in the tract or real property [to] appear in the proceeding on this petition [for a tax deed]." The statute does not restrict those persons allowed to appear in the proceeding to the "owner and any person with a substantial property interest of public record in the tract or real property." Even though she failed to record her deed, Nava clearly owned the Property and had an interest in the real estate and was entitled to appear in the proceedings. If she was entitled to appear in the proceedings but was not allowed to challenge the propriety of Kezy's actions, Nava's ability to appear in the proceedings would be of no value. Consequently, we conclude that Nava was entitled to challenge the content of Kezy's notices.

We now address the propriety of Kezy's notices. As noted above, a tax deed may be defeated if "the description of the tract or real property was so imperfect as to fail to describe it with reasonable certainty" or if the "notices required by IC 6–1.1–24–4, and sections 4.5 and 4.6 of this chapter were not in substantial compliance with the manner prescribed in those sections."

**13.** Subsequently amended by Pub.L. No. 139–2001, § 16 (eff. July 1, 2001); Pub.L. No. 170–2003, § 11 (eff. July 1, 2003). Ind.Code § 6–1.1–25–4.5(c) now requires notice to be provided to "(A) the owner of record at the time of the sale; and (B) any person with a substantial property interest of public record in the tract or real property."

**14.** Subsequently amended by Pub.L. No. 139–2001, § 17 (eff. July 1, 2001); Pub.L. No. 170–2003, § 12 (eff. July 1, 2003); Pub.L. No. 97–2004, § 23 (eff.Mar. 16, 2004). Ind. Code § 6–1.1–25–4.6(a) now provides: "Any person owning or having an interest in the tract or real property may file a written objection to the petition with the court not later than thirty (30) days after the date the petition was filed. If a written objection is timely filed, the court shall conduct a hearing on the objection."

Ind.Code § 6–1.1–25–16. Ind.Code § 6–1.1–25–4.5(c)(3) required that the redemption notice contain, among other things, the "description of the tract or real property shown on the certificate of sale." [15] Further, Ind.Code § 6–1.1–22–2(b) provides:

Real property is sufficiently described for the purpose of conveying title to it when it is sold for the nonpayment of taxes if it is described by:

(1) reference to the name of the subdivision and lot number if the tract of land has been platted into lots or subdivided and a plat of the tract has been recorded in the office of the county recorder;

(2) reference to its key number, if any, and the description, including the number of acres, contained in a deed, mortgage, will, or other public record of the county; or

(3) reference to a description prepared by the county surveyor under subsection (c) of this section.

Here, the Tax Sale Certificate described the Property as:

26–36–0244–0029

TURNER'S 1ST ADD.

E.90FT L.23 BL.4

E.90FT L.24 BL.4

Appellant's Appendix at 189. However, Kezy's redemption notice that was published described the Property as "26–36–0244–0029 E.90FT L23 BL 4 E.90FT L24 BL.4." *Id.* at 193.

■ Nava makes no claim that the description on the Tax Sale Certificate failed to describe the Property with reasonable certainty or was improper under the statutes. However, she argues that the description on Kezy's redemption notice, which lacked the subdivision name, was so imperfect as to fail to describe it with reasonable certainty and that Kezy's notice was not in substantial compliance with the statutes. We agree.

Ind.Code § 6–1.1–25–4.5(c)(3) required that the redemption notice contain the same description of the property as that contained in the Certificate of Sale. While the description contained in the Certificate of Sale included the name of the subdivision, Kezy's redemption notice did not contain the name of the subdivision. Moreover, the description did not comply with Ind.Code § 6–1.1–22–2(b)(1) because it did not contain the name of the subdivision and did not comply with Ind.Code § 6–1.1–22–2(b)(2) because it did not contain a description of the property, "including the number of acres, contained in a deed, mortgage, will, or other public record ..." [16] While minor errors in the description of the Property may be excused as substantial compliance, the description included in Kezy's redemption notice was "so imperfect as to fail to describe it with reasonable certainty." I.C. § 6–1.1–25–16. The description "26–36–0244–0029 E.90FT L23 BL 4 E.90FT L24 BL.4" was too uncertain and meaningless to constitute substantial compliance. *See, e.g., Brown v. Reeves & Co.,* 31 Ind.App. 517, 518, 68 N.E. 604, 604 (1903) (holding that the advertised description of "Lot 1 Col. W. Co." was "too indefinite and uncertain," "meaningless," and did not "give sufficient data from which the real estate could be located" where the proper description was "Lot

---

15. Ind.Code § 6–1.1–25–4.5(f) now requires the redemption notice to contain "[a] description of the tract or real property shown on the certificate of sale," "[t]he street address, if any, or a common description of the tract or real property," and "[t]he key number or parcel number of the tract or real property."

16. Ind.Code § 6–1.1–22–2(b)(3) is not applicable here.

one (1) in the Columbus Wheel Company and M.T. Reeves' Addition to the City of Columbus").

Nava presented affirmative evidence sufficient to rebut the presumption that the issuance of the tax deed to Kezy was proper. *See, e.g., Porter,* 773 N.E.2d at 907 (holding that the property owner presented affirmative evidence sufficient to rebut the presumption that the issuance of the tax deed was proper because the purchaser failed to provide notice that he had filed a petition seeking tax deeds). We conclude that the trial court's judgment in Kezy's favor is clearly erroneous.

For the foregoing reasons, we affirm the trial court's judgment in favor of Swets on Nava's cross claim, reverse the trial court's judgment in favor of Kezy, and remand for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

RILEY, J. and BARNES, J. concur.