**MJ ACQUISITIONS, INC., Appellant,**

v.

**TEC INVESTMENTS, LLC; Delaware County Auditor; and Delaware County Treasurer, Appellees.**

No. 18A02–0608–CV–646.

Court of Appeals of Indiana.

March 28, 2007.

John E. Kolas, Slaughter & Kolas, Indianapolis, IN, Attorney for Appellant.

Jon L. Orlosky, Muncie, IN, Attorney for Appellee Tec Investments, LLC.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

MJ Acquisitions, Inc. ("MJ"), appeals from the trial court's order directing the Delaware County Auditor ("the Auditor") to issue a tax deed to Tec Investments, LLC ("Tec"). MJ presents a single issue for review, which we restate as whether the trial court erred as a matter of law when it ordered the Auditor to issue a tax deed to Tec arising from a 2004 tax sale.

We reverse and remand with instructions.

### FACTS AND PROCEDURAL HISTORY

In 2003, Deborah Husk owned real property located at 1708 West Just–A–Mere Lane in Muncie ("the property"). On October 14, 2003, the Delaware County Auditor[1] conducted a public tax sale ("2003 tax sale"). The property was included in the 2003 tax sale based on delinquent 2000 and 2001 taxes, penalties, interest and costs due on the property.

At the start of the 2003 tax sale, the Delaware County Auditor ("Auditor") announced that additional real estate taxes would be due and owing shortly after the sale due to a reassessment in 2002 ("2002 reassessment"). The record is unclear whether MJ was present when that announcement was made. In any event, MJ was the highest bidder on the property, with a total bid of $45,000. That price included the minimum bid amount of $1,833.81 and an overbid amount of $43,166.19. After the sale, the Auditor issued a tax sale certificate to MJ ("2003 tax certificate").

In 2004, the property was again placed on the delinquent tax list, this time as a result of unpaid taxes that had accrued in 2002 and were payable in 2003 as well as unpaid taxes that had accrued in 2003 and were payable in 2004. The 2003 delinquent taxes were the same additional taxes that had accrued in 2003 as a result of the 2002 reassessment and had become due shortly after the 2003 tax sale. Because of

---

1. Neither the record on appeal nor the parties indicate the name of the official who conducted the 2003 or 2004 tax sales. Thus, we refer to the Delaware County Auditor generally when addressing the statutory duties performed by that office, including conducting tax sales. The Delaware County Deputy Auditor, who attended the 2003 tax sale and testified at the hearing in this matter, is named individually by that title later in this opinion.

those delinquencies, the Delaware County Treasurer[2] ("the Treasurer") included the property on the 2004 delinquency list, and on October 12, 2004, the Auditor sold the property, again, at the 2004 tax sale ("2004 tax sale"). Notice of the 2004 tax sale was sent to Husk as the record owner. Tec was the highest bidder at that sale, purchasing the property for the minimum bid amount of $5,292.82.

On October 29, 2004, MJ filed in the Delaware Circuit Court a petition for a tax deed based on its purchase at the 2003 tax sale.[3] A creditor of Husk, AAA Collections, Inc. ("AAA"), petitioned for perfection of its lien against the property and for payment of the lien from the surplus that resulted from the 2003 tax sale. On July 21, 2005, MJ and AAA filed an amended agreed order book entry, perfecting AAA's lien and allowing payment to AAA from the surplus. The record on appeal does not include any notices of the tax sale distributed by MJ or MJ's petition for the issuance of a tax deed arising from the 2003 tax sale.

In the interim, on May 23, 2005, Tec served notice on Husk, MJ, and the Muncie Sanitary District ("the sanitary district"), informing them of the 2004 tax sale and the expiration date for the redemption period from that sale. None of the noticed parties took any action regarding the 2004 tax sale before the redemption period expired on October 12, 2005. On October 13, 2005, Tec sent to Husk, MJ, and the sani-

tary district notice that it had on that date filed in the Delaware Circuit Court its petition for an order directing the Auditor to issue a tax deed arising from the 2004 tax sale. On November 3, 2005, MJ filed its verified objection to Tec's petition.

Meanwhile, on November 14, 2005, the Delaware Circuit Court entered an order granting MJ's petition, directing the Delaware County Auditor to issue a tax deed to MJ arising from its purchase at the 2003 tax sale. The Auditor issued a tax deed ("2003 tax deed") to MJ on November 23, 2005.

On February 23, 2006, Tec filed its affidavit ("the Affidavit") and proof of service of the redemption period notice to Husk, MJ, and the sanitary district.[4] On April 13, 2006, the Delaware Circuit Court held a hearing on Tec's petition for the issuance of a tax deed and MJ's objection. The parties filed post-hearing briefs, and, on June 12, 2006, the trial court entered its order directing the Delaware County Auditor to issue a tax deed to Tec for the 2004 tax sale. In its order, the trial court found, in relevant part:

1. The subject property herein was sold at tax sale to MJ Acquisitions on October 14, 2003.

2. The subject property herein was again sold at tax sale to Tec Investments LLC on October 12, 2004.

3. That Tec Investments LLC gave the appropriate tax sale purchaser no-

2. Similar to our reference to the Delaware County Auditor, we refer to the Delaware County Treasurer generically in reference to statutory duties performed by that office.

3. The record on appeal does not indicate whether MJ sent notice of its petition to Tec, nor is there a copy of the petition in the record before us.

4. In paragraph three of the Affidavit, Tec asserted that it was the only person or entity

that held a substantial property interest of public record in the property on the date and hour of the 2004 tax sale. And in paragraphs four and five, Tec said that it sent notices of the redemption period and the filing of the tax petition to the persons listed in paragraph three. But the notices that follow the Affidavit in Appellant's Appendix were sent to Husk, MJ, and the sanitary district. Thus, we assume that Tec mistakenly listed itself in paragraph three as the only person or entity holding a substantial interest in the property.

tices under Indiana Code Sections 6–1.1–25–4.5 and [–]4.6.

4. That the subject property has not been redeemed.

5. That Indiana Code Section 6–1.1–24–12 is the controlling statute for properties that are sold in successive sales.

6. That Indiana Code Section 6–[1.1]–24–12 provide[s] as follows:

[ ]Whenever real property is sold more than once under this chapter, the purchaser at the later sale acquires a first and prior lien on the real property as against the purchaser at the prior sale. The issuance of a certificate of sale, the execution and delivery of a deed for the real property to the purchaser at the prior sale, or the recording of such a deed does not affect the priority established in this section.[ ]

7. The Tax Sale purchasers were notified at the time of the 2003 tax sale that additional taxes may be due as a result of an ongoing reassessment.

8. That *MJ Acquisitions failed to pay the additional taxes due from the spring of 2003* and subsequent taxes and therefore, the property was properly placed in the 2004 tax sale pursuant to Indiana Code Section 6–1.1–24–1.

9. That the time for redemption has expired.

10. That all taxes and special assessments, penalties and costs have been paid.

11. That [Tec] has complied with all the provisions of law entitling it to a deed.

Appellant's App. at 5–6 (emphasis added). MJ now appeals.

## DISCUSSION AND DECISION

MJ contends that the trial court erred when it ordered the Delaware County Auditor to issue to Tec a tax deed arising from the 2004 tax sale. Specifically, MJ argues that the property should not have been included in the 2004 tax sale. We must agree.

■ Property taxes assessed for a year are due in two equal installments on May 10 and November 10 of the following year. Ind.Code § 6–1.1–22–9(a).[5] A property tax installment is delinquent if the county treasurer or his collecting agent does not receive the tax payment, on or before the due date or if the payment is not deposited in the United States mail or another nationally recognized express parcel carrier, postage paid and properly addressed to the county treasurer on or before the due date. Ind.Code § 6–1.1–37–10(f). Indiana Code Section 6–1.1–24–1(a)(1) directs the county treasurer to prepare a list of properties with delinquent taxes. That statute provides, in relevant part:

On or before July 1 of each year, the county treasurer shall certify to the county auditor a list of real property on which any of the following exist: [a]ny property taxes . . . certified to the county auditor for collection by the county treasurer from the prior year's spring installment or before are delinquent as determined under [Indiana Code Section] 6–1.1–37–10.

The county treasurer shall then sell the properties on the delinquency list at a public sale as provided in Indiana Code Section 6–1.1–24–5. The tax sale process is

---

**5.** The statutes governing tax sales have been amended since the events in this case occurred. Thus, citations to statutes, unless otherwise noted, are to the statutes in effect in 2004, when the Delaware County Treasurer compiled the 2004 delinquency list and the Auditor conducted the 2004 tax sale.

purely a statutory creation and requires material compliance with each step of the governing statutes, Indiana Code Sections 6–1.1–24–1 through–14 (sale), and 6–1.1–25–1 through–19 (redemption and tax deeds). *Reeder Assocs. II v. Chicago Belle, Ltd.,* 778 N.E.2d 828, 831 (Ind.Ct. App.2002), *trans. denied.*

Here, the question before us is whether the property should have been included on the 2004 delinquency list and, therefore, was eligible for sale again at the 2004 tax sale. The Delaware County Deputy Auditor ("Deputy Auditor") testified that the property was included on the 2004 delinquency list because of delinquent taxes from three tax installment periods, namely, taxes due and owing for May and November 2003 as well as taxes due and owing in May 2004. We address in turn whether the property should have been included on the 2004 delinquency list based on the installments due in 2003 and in 2004.

### Taxes Due and Owing in 2003

■ The Deputy Auditor testified that the property was included on the 2004 delinquency list, and therefore sold in the 2004 tax sale, because of unpaid additional taxes that were due and owing in May and November 2003. In particular, she testified that those taxes resulted from the 2002 reassessment, notice of which was given orally at the beginning of the 2003 tax sale. The additional amount owed from the 2002 reassessment had not yet been determined at the time of the 2003 tax sale but was ascertained after the 2003 tax sale and became due and owing on November 13, 2003. Because the additional taxes based on the 2002 reassessment were not paid, the Treasurer included the property on the 2004 delinquency list for the 2004 tax sale. Thus, we first consider whether the property was properly included on the 2004 delinquency list based on that delinquency.

Indiana Code Section 6–1.1–24–5(e) defines the minimum price for which a tract may be sold at a tax sale, namely, the sum of:

(1) the delinquent taxes and special assessments on each tract or item of real property;

(2) the taxes and special assessments on each tract or item of real property that are due and payable in the year of sale, regardless of whether the taxes and special assessments are delinquent;

(3) all penalties which are due on the delinquencies;

(4) the amount prescribed by [Indiana Code Section 6–1.1–24–2(a)(3)(D)] reflecting the costs incurred by the county due to the sale;

(5) any unpaid costs which are due under [Indiana Code Section 6–1.1–24–2(b)] from a prior tax sale; and

(6) other reasonable expenses of collection, including title search expenses, uniform commercial code expenses, and reasonable attorney's fees incurred by the date of the sale.

Indiana Code Section 6–1.1–24–7 directs how the sale price shall be applied. Specifically, immediately after the tax sale, the purchaser shall pay to the county treasurer the amount of the bid, and the treasurer "*shall* apply the payment in the following manner: (1) first, to the taxes, special assessments, penalties, and costs described in [Indiana Code Section 6–1.1–24–5(e)]; (2) second, to other delinquent property taxes in the manner provided in [Indiana Code Section] 6–1.1–23–5(b); and (3) third, to a separate 'tax sale surplus fund[.]' " Ind.Code § 6–1.1–24–7(a) (emphasis added). Thus, any amount remaining after applying the purchase price as dictated by Indiana Code Section 6–1.1–24–7(a) is a

surplus that the treasurer deposits into the tax sale surplus fund. Ind.Code §§ 6–1.1–24–5(3),–7(a).

Here, as noted above, MJ bought the property at the 2003 tax sale for the minimum bid amount plus a substantial overbid. The Treasurer applied the purchase price from the 2003 tax sale first to the delinquent taxes and special assessments on the property but not to the installment due November 2003 as a result of the 2002 reassessment. The November installment constituted a tax that was "due and payable in the year of sale, regardless of whether the tax[was] delinquent[,]" see Ind.Code § 6–1.1–24–5(e)(2), and, therefore, the Treasurer should have applied a portion of the surplus to pay that installment. Because the Treasurer was required to pay the 2003 taxes from the surplus, the Treasurer should not have certified those taxes as delinquent or listed the property on the 2003 delinquent tax list.

We recognize that amount due for the 2002 reassessment was not yet ascertainable at the time of the 2003 tax sale. Instead, that amount was determined after that sale and became due and owing on November 13, 2003, one month after the tax sale. Nevertheless, the Treasurer held the overbid amount in the tax surplus fund during the one-year redemption period, after which time Husk, the person divested of ownership after issuance of the 2003 tax deed, applied for the surplus. *See* Ind. Code § 6–1.1–24–7(b)(1). The Treasurer had twelve months to pay the 2003 taxes from the tax surplus fund.

## Tax Due and Owing in Spring 2004

The Deputy Auditor also testified that the property was included on the 2004 delinquency list for the 2004 tax sale because of unpaid taxes that were due and owing in the spring of 2004.[6] But, as noted above, a property may be included on the tax delinquency list only for taxes that remain delinquent from the *prior year's* spring installment or before. Ind. Code § 6–1.1–24–1(a)(1). Thus, the taxes due and owing in 2004 were not grounds to include the property on the 2004 delinquency list for the 2004 tax sale. As such, the Treasurer improperly included the property in the 2004 tax sale on the basis of the taxes due and owing in 2004.

## 2004 Tax Deed

Tec argues that the Treasurer correctly included the property in the 2004 tax sale, *citing in support this court's recent decision in Nieto v. Kezy, 846 N.E.2d 327 (Ind.Ct.App.2006).* Tec further contends that, under Indiana Code Section 6–1.1–24–12, the issuance of a tax deed to the purchaser at the 2004 tax sale has priority over the tax deed issued as a result of the purchase at the 2003 tax sale. The trial court relied on that statute when it ordered the auditor to issue the 2004 tax deed to Tec. We address each contention in turn.

Tec first asserts that this court's holding in *Nieto* supports its position that the property was properly included in the 2004 tax sale. *Nieto* involved a statewide reassessment and computer change regarding property taxation in 1995. As a result of that reassessment, the installment normal-

---

6. We acknowledge that Tec did not argue that the failure to pay any tax installment due in 2004 was a proper basis for including the property on the 2004 delinquency list. However, we address that question because our disposition in this case is based on the conduct of the county treasurer and auditor, and the deputy auditor specifically testified that the property was included in the 2004 tax sale based, in part, on taxes that were due and owing in 2004.

ly due and owing in May 1996 instead became due and owing in October 1996. The November 1996 installment was due on the usual date. In 1997, Swets sold a home to Nava, and Nava failed to record the deed. Neither Swets nor Nava paid the May 1996 (due that year in October) or November 1996 tax installments. As a result, the home was placed on the 1997 delinquency list and sold at the 1997 tax sale to Kezy. For reasons not relevant here, neither Swets nor Nava received notice of the tax sale.

Nava eventually recorded her deed on April 6, 1999, the same day that the county auditor issued a tax deed to Kezy. Nava subsequently appealed the issuance of the tax deed. In return, Kezy filed a quiet title action against Nava and Swets, and Nava filed a cross-claim against Swets. Nava died before trial, and her daughter, Nieto, was substituted as a party. After a bench trial, the court entered judgment against Nieto on both Kezy's complaint and the cross-claim.

Nieto appealed the trial court's findings of fact and conclusions regarding the propriety of including the home on the 1997 delinquency list. The trial court had found that the property was placed on the delinquency list because the spring installment for 1996, due and payable in October 1996, had not been paid. Nieto argued that there was no spring installment due for 1996 as a result of the reassessment and, therefore, that the trial court's finding and conclusion were clearly erroneous. This court disagreed, holding that moving the payment deadline for the 1996 spring installment from May to October had not eliminated the spring installment altogether. Further, the deadline for creating the 1997 delinquency list had been unaffected by the 1995 reassessment. Thus, the trial court's finding that the 1996 spring installment was unpaid and its conclusion that

the home was, therefore, properly included on the 1997 delinquency list were not clearly erroneous.

We note that while Tec has cited and quoted from *Nieto,* Tec has provided no analysis of how that decision applies to the present case. Moreover, although *Nieto* is factually similar to the case before us, we conclude that its holding is not controlling here. Like the case before us, Nieto involved a reassessment that affected the date on which taxes became due and owing. But the relevant issue in *Nieto* was whether, in fact, any spring tax installment had become due and owing and whether the failure to pay that installment could result in the home being included on the following year's delinquency list. We held that the record supported the trial court's finding that there was a spring installment due in 1996, albeit due in October of that year, and that the failure to pay that installment resulted in a delinquency that qualified the property for inclusion on the 1997 delinquency list.

Likewise, here, a reassessment caused a tax installment to become due and owing on a date other than the usual May and November due dates. Specifically, the additional taxes due in May and November 2003 that arose as a result of the 2002 reassessment became due and owing in November 2003. Because the installment due in November 2003 was not paid, the Treasurer included the property on the 2004 delinquency list for the 2004 tax sale.

But the similarities between the two cases end there. *Nieto* involved only a single tax sale. Here, the county sold the property at successive tax sales, and the purchase price paid at the 2003 tax sale included a substantial surplus. As discussed above, the statute required the Treasurer to apply that surplus to pay any taxes that became due and owing in 2003, the year of the first tax sale. That includ-

ed the additional taxes from the 2002 reassessment that became due and owing in November 2003. Had the Treasurer properly applied the surplus in that manner, there would have been no "delinquency" from 2003 to place the property in the 2004 tax sale. Thus, unlike the home in *Nieto*, the property in this case should not have been included in the second tax sale.

Tec also relies on Indiana Code Section 6–1.1–24–12 in support of its contention that the trial court properly issued the 2004 tax deed to Tec. That section provides:

> Whenever real property is sold more than once under [Indiana Code 6–1.1–24], the purchaser at the later sale acquires a first and prior lien on the real property as against the purchaser at the prior sale. The issuance of a certificate of sale, the execution and delivery of a deed for the real property to the purchaser at the prior sale, or the recording of such a deed does not affect the priority established in this section.

We conclude that that code provision does not apply on the facts before us.

Indiana Code Section 6–1.1–24–12 prescribes the priority for tax deeds issued after a tract is sold at more than one tax sale. But Indiana Code Section 6–1.1–24–12 assumes that the tract sold at more than one tax sale is properly included in the later tax sale. For the reasons discussed above, the property in this case was not properly included in the 2004 tax sale. Thus, Indiana Code Section 6–1.1–24–12 does not apply on the facts before us.

## Conclusion

We hold that the Delaware County Treasurer should not have included the property on the 2004 delinquency list for the 2004 tax sale. By statute, the Treasurer was required to apply the purchase price paid by MJ at the 2003 tax sale first to the delinquent taxes that prompted that sale and then to any other taxes that had become due and owing in the year of that sale, including the amount that resulted from the 2002 reassessment. And the Treasurer should not have included the property on the 2004 delinquency list based on unpaid taxes due and owing in the spring of 2004, because only unpaid taxes from the spring of the preceding year or earlier qualify the property for a delinquency list.

We reverse the trial court's order directing the Delaware County Auditor to issue a tax deed to Tec, and we remand to the trial court with instructions to enter judgment denying Tec's petition for the issuance of a tax deed and setting aside the tax deed issued to Tec by the Delaware County Auditor. We further instruct the Delaware County Auditor to refund the purchase money from the 2004 tax sale to Tec as provided under Indiana Code Section 6–1.1–25–11(a), and we instruct Tec to execute, acknowledge, and deliver to MJ a deed conveying Tec's interest in the property to MJ as provided under Indiana Code Section 6–1.1–25–11(b).

Reversed and remanded with instructions.

MAY, J., and MATHIAS, J., concur.