896 N.E.2d 1243 (2008)
In the Matter of the Termination of the Parent Child Relationship of S.B. and D.B., Minor Children, and Daniel Bailey, Sr., Their Father.
Daniel Bailey, Sr., Appellant-Respondent,
v.
Dubois County Department of Child Services, Appellee-Petitioner.
No. 19A01-0804-JV-161.
Court of Appeals of Indiana.
December 2, 2008.
*1244 Steven E. Ripstra, Ripstra Law Office, Jasper, IN, Attorney for Appellant.
Rebecca A. James, Dubois County Office of Department of Child Services, Jasper, IN, Attorney for Appellee.

OPINION
RILEY, Judge.

STATEMENT OF THE CASE
Appellant-Respondent, Daniel Bailey, Sr. (Father), appeals the trial court's involuntary termination of his parental rights to his children, S.B. and D.B.
We affirm.

ISSUE
We raise, sua sponte, the following dispositive issue: Whether the trial court violated Indiana Code section 31-35-2-8 when, following the termination hearing, it postponed its pronouncement of judgment and failed to either (1) terminate Father's parental rights or (2) dismiss the DCDCS's involuntary termination petition.

FACTS AND PROCEDURAL HISTORY
Father is the biological parent of S.B. and D.B. (collectively, the twins), born on May 9, 1997. At the time of the twins' birth, Father was married to the twins' *1245 mother, Christina Bailey (Mother).[1] The Dubois County Department of Child Services (DCDCS) first became involved with the family in October of 2002, when it received a referral alleging Mother had hit and bruised D.B.'s face. DCDCS initiated an investigation and the allegations contained in the referral were substantiated. DCDCS planned to enter into an informal adjustment[2] with the family, but they moved out of the county.
In July 2003, DCDCS received and substantiated another referral against the parents for lack of supervision. For the next several years, DCDCS received and substantiated at least eight reports of abuse of the twins by Mother and four reports of abuse of the twins by Father, in addition to multiple reports of neglect and lack of supervision by both parents. During this time, Father was constantly in and out of prison.
On December 7, 2005, DCDCS filed a petition alleging the twins were children in need of services (CHINS) following a physical altercation between Mother and Father, which had occurred several days earlier, on November 30, 2005, at the family residence while the twins were at home. A hearing on the CHINS petition was held on January 6, 2006, during which Mother and Father, who were both present and represented by counsel, admitted to the allegations of the CHINS petition. S.B. and D.B. were determined to be CHINS and placed under the legal custody of DCDCS; however, the twins were allowed to remain in the physical custody of Mother. A dispositional hearing was held on February 15, 2006, and on February 28, 2006, the trial court issued its dispositional order directing both parents to participate in a variety of services in order to regain legal custody of the twins. Father was ordered to, among other things, maintain stable employment and work with a parent aide from Southern Hills Counseling Center once released from his current work release program on such issues as proper supervision, appropriate discipline, parenting skills, domestic issues, and providing a sanitary home environment. Father was also ordered to submit to a mental health assessment and to follow all recommendations of the evaluating therapist, including individual and family counseling and any recommended drug and alcohol counseling. Father was further ordered to cooperate with DCDCS and all service providers.
On March 20, 2006, the police were called to the family home due to a physical altercation between Father, who was on work release at the time, and Mother, who was intoxicated. As a result of the altercation, the police arrested Mother on an outstanding body attachment. Consequently, S.B. and D.B. were removed from the family home and placed in protective custody. A detention hearing was held the next day, and on March 24, 2006, the trial court issued an order directing the twins to remain in both the physical and legal custody of DCDCS.
Father's participation in court-ordered services and visitation was inconsistent and unsuccessful. Consequently, on June 21, 2007, DCDCS filed a petition seeking the involuntary termination of Father's parental *1246 rights to the twins. A three-day fact-finding hearing on the termination petition commenced on October 30, 2007, continued on October 31, 2007, and concluded on November 5, 2007. During the evidentiary hearing, DCDCS presented significant evidence establishing the elements of Indiana Code section 31-35-2-4, including evidence (1) that the twins had been removed from Father's care and custody for at least fifteen of the previous twenty-two months, (2) that Father had failed to complete the majority of the dispositional goals set during the CHINS proceeding, and (3) that Father continued to use alcohol and had informed service providers he had no intention of quitting. DCDCS also presented evidence through its case managers and other service providers, including therapists and social workers involved with the family, that termination of Father's parental rights was in the twins' best interests and that DCDCS's long-term plan for the care and treatment of the children was adoption.
At the conclusion of the termination hearing, the trial court neither granted DCDCS's termination petition, nor dismissed it. Instead, the court informed Father that it was going to "take a chance and put [Father] on an informal adjustment for a period of six months[.]" (Transcript p. 283). On the same day, the trial court made the following entry in the court docket:
The [c]ourt, having heard evidence, now takes the matter under advisement for a period of six (6) months. The [twins] shall remain in the CHINS status under the supervision of [DCDCS]. The [c]ourt further Orders [Father] to maintain full employment; refrain from any violence in his home or anywhere; avoid any trouble and not associate with any persons who may cause trouble; submit to random drug and alcohol screens at his own expense to be arranged by [DCDCS]; and shall continue visitation as per [DCDCS] recommendations. The [c]ourt further advises [Father] that the [c]ourt will have a `zero tolerance' during this six[-]month period.
(Appellant's App. pp. 4, 9).
On February 7, 2008, a CHINS review hearing, including a review of the termination of parental rights matter, was held. Father was present and represented by counsel. At the review hearing, DCDCS presented evidence that Father had failed to comply with the updated parental participation order in that he (1) had admitted to using alcohol and had tested positive for alcohol on at least two separate occasions, (2) had been observed by DCDCS workers with empty beer cans in his home, (3) had continued to express his anger towards DCDCS, (4) had continued to refuse the advice of his therapist to develop coping skills for dealing with times of crisis and stress, (5) had failed to maintain an operating telephone number, and (6) had missed three visitations with the children because of bad weather or pain due to an ankle injury. In addition, evidence was presented that both S.B. and D.B. had experienced significant regression in their behavior since resuming visitation with Father.
Based on the foregoing, on February 26, 2008, the trial court issued its judgment terminating Father's parental rights to the twins. In so doing, the trial court made specific findings of facts and conclusions of law based on the evidence presented both during the original three-day termination hearing, as well as evidence presented in the subsequent February 7 CHINS review hearing. Included in the trial court's judgment[3] was the following specific finding:

*1247 5. On November 5, 2007 ... [t]he court also concluded that [DCDCS] had met its burden of proof as to [F]ather and that the Court was inclined to terminate [F]ather's rights. However, the court granted [F]ather one final chance to prove he can make necessary changes to care for his children. At that time, from the bench, Father was ordered to participate in a plan of treatment pursuant to a Parental Participation Order dated November 5, 2007. Said Order set forth that [F]ather must comply 100% with the Order and that there would be "zero tolerance" by the court should [F]ather not follow the Order.
(Appellant's App. pp. 14-15). (Emphasis added).
Father now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION
Although not raised by either party, we find the dispositive issue in this case to be whether the trial court committed reversible error when it postponed its pronouncement of judgment and failed either to (1) terminate Father's parental rights or (2) dismiss DCDCS's termination petition at the conclusion of the termination hearing. Resolution of this issue requires that we interpret Indiana Code section 31-35-2-8.
Initially, we note our standard of review. When interpreting a statute, we independently review a statute's meaning and apply it to the facts of the case under review. Nieto v. Kezy, 846 N.E.2d 327, 335 (Ind.Ct.App.2006). We are neither bound by, nor are we required to give deference to, the trial court's interpretation. KPMG, Peat Marwick, LLP v. Carmel Financial Corp., Inc., 784 N.E.2d 1057, 1060 (Ind.Ct.App.2003).
The first step in interpreting any Indiana statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question. Nieto, 846 N.E.2d at 335. If a statute is unambiguous, we must give the statute its clear and plain meaning. Id. A statute is unambiguous if it is not susceptible to more than one interpretation. Id. In addition, the language employed in a statute is deemed to have been used intentionally. KPMG, Peat Marwick, LLP, 784 N.E.2d at 1060. Finally, we presume that our legislature intended the statutory language to be applied in a logical manner consistent with the underlying goals and policy of the statute. Id.
Indiana Code section 31-35-2-8 provides, "[I]f the court finds that the allegations in a [termination] petition described in section 4 of this chapter are true, the court shall terminate the parent-child relationship.... If the court does not find that the allegations in the petition are true, the court shall dismiss the petition." Id. (Emphasis added.) Applying the standard set forth above, we find the language of Indiana Code section 31-35-2-8 to be clear and unambiguous on its face; therefore we may not interpret it. Rather, we must give the words of the statute their plain, ordinary, and usual meaning.
Turning to the facts of the present case, in order to terminate Father's parent-child relationship with the twins, DCDCS was required to allege and prove:
Sec. 4

*1248 * * *
(A) one of the following exists:
(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
(ii) a court has entered a findings under IC XX-XX-XX-X.6 that reasonable efforts for family preservation or reunification are not required...; or
(iii) after July 1, 1999, the child has been removed from the parent and under the supervision of a county office ... for at least fifteen (15) months of the most recent twenty-two (22) months;
(B) there is a reasonable probability that:
(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or
(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;
(C) termination is in the best interests of the child; and
(D) there is a satisfactory plan for the care and treatment of the child.
Ind.Code § 31-35-2-4 (1998 & Supp 2007). Moreover, DCDCS was required to establish each of these allegations by clear and convincing evidence. Egly v. Blackford County Dep't of Pub. Welfare, 592 N.E.2d 1232, 1234 (Ind.1992). The record reveals that at the conclusion of the evidentiary hearing on the termination petition on November 5, 2007, the trial court declined to either terminate Father's parental relationship with the twins or dismiss DCDCS's termination petition. Instead, the trial court decided to grant Father "one final chance" and ordered the parental participation plan revised to allow Father to continue to participate in services for up to an additional six months under a new "zero tolerance" plan. (Appellant's App. pp. 14-15). The trial court took this course of action despite its admission in its February 2008 termination order that, at the time of the November 2007 termination hearing, it had already "concluded that [DCDCS] had met its burden of proof as to [F]ather[.]" Id. at 14.
The trial court's decision to postpone its pronouncement of judgment and give Father one final chance despite its conclusion that DCDCS had already satisfied its burden of proof was in direct violation of Indiana Code section 31-35-2-8 which clearly provides that a trial court shall either find the allegations in the petition to be true and terminate the parent-child relationship, or find the allegations not to be true and dismiss the petition.
Because the trial court failed to comply with Indiana Code section 31-35-2-8, its judgment terminating Father's parental rights to S.B. and D.B. is erroneous. Nevertheless, given the circumstances before us, we find the trial court's error to be harmless. To be sure, while we do not approve of the trial court's postponement of its ruling pursuant to Indiana Code sections 31-35-2-8 and 31-35-2-4, remanding this cause to the trial court with instructions to hold a new termination hearing would be against the twins' best interests. The children have lingered in the system six months longer than needed while Father dabbled with services, continued to use alcohol, and failed to maintain regular contact with the twins. The twins need and deserve stability and permanency now. The current system has already been criticized for putting children in limbo too long, thereby fostering instability and unhinged relationships. See Baker v. Marion County Office of Family and Children, 810 N.E.2d 1035, 1040 (Ind. *1249 2004). It is undeniable that it is within a child's best interest and overall well being to limit the potential for years of litigation and uncertainty. See id. In light of these considerations and the trial court's clear determination that the DCDCS satisfied its burden of proof on November 5, 2007 and again on February 26, 2008, we affirm the trial court's termination of Father's parental rights to the twins.

CONCLUSION
Based on the foregoing, we hold that, although the trial court violated Indiana Code section 31-35-2-8 by postponing its pronouncement of judgment, this error was, given the circumstances, harmless.
Affirmed.
BAILEY, J., and BRADFORD, J., concur.
NOTES
[1] Mother's parental rights to the twins were terminated on October 30, 2007. Mother does not participate in this appeal. Consequently, we limit our recitation of the facts to only those facts pertinent to Father's appeal.
[2] An informal adjustment is a negotiated agreement between the family and a county department of child services (here, DCDCS) wherein the family agrees to participate in various services, provided by the county, in an effort to prevent the children from being formally deemed children in need of services ("CHINS").
[3] We observe that because DCDCS filed separate termination petitions for S.B. and D.B. under different cause numbers, the trial court entered separate judgments termination Father's parental rights for each child. Except for the names and captions, however, the language contained in each judgment is identical.