**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**PETER D. TODD**
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL L. WILSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A04-1109-CR-531 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Stephen R. Bowers, Judge
Cause No. 20D02-1010-FB-26

**February 27, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Michael L. Wilson (Wilson), appeals his conviction for burglary, a Class B felony, Ind. Code § 35-43-2-1, and his adjudication as a habitual offender, I.C. § 35-50-2-8.

We affirm.

## ISSUE

Wilson raises one issue on appeal, which we restate as: Whether the trial court committed fundamental error by appointing Wilson's former public defender as standby counsel when he elected to defend himself at trial.

## FACTS AND PROCEDURAL HISTORY

On October 13, 2010, the State filed an Information charging Wilson with burglary, a Class B felony, as well as alleging that he was a habitual offender. At the initial hearing, the trial court appointed a public defender, Bridgette Greene (Greene), on behalf of Wilson. Because Greene and Wilson disagreed on litigation strategy, Greene moved to withdraw as Wilson's counsel on April 19, 2011. After a hearing two days later, the trial court granted Greene's motion and appointed Mark Manchak (Manchak) as his counsel. Wilson waived his speedy trial request and the trial court vacated the trial date. During the hearing, the trial court warned Wilson that the court would not "be very sympathetic to a claim that there's a problem with the second attorney unless there's something very specific [] to suggest that there's a genuine problem." (Transcript p. 35).

2

On August 22, 2011, the day prior to Wilson's trial, the State moved to amend the Information, which was granted by the trial court. At the hearing, Wilson asked to be heard and explained to the trial court that attorney Manchak "started off on the wrong page which is telling me what he's going to do . . . He [is] a habitual liar. [] He really is. He tell me he gonna come back and see me, he gonna do this, he gonna file paperwork, . . . , but then he doesn't do it." (Tr. p. 56). Wilson concluded that his attorney was "really working with the [S]tate." (Tr. p. 57). Upon hearing Wilson's complaints, the trial court cautioned him that: "in terms of general dissatisfaction with your attorney and you've had one opportunity to change lawyers. I'm not giving you another one." (Tr. p. 60). Addressing Wilson's specific allegations, the trial court asked attorney Manchak to respond. After questioning attorney Manchak about the specific tasks that Wilson had set him, the trial court concluded:

> [Wilson], I don't think that any of that will materially [a]ffect the trial, I'm not giving you a new lawyer. We've been through this before. I cautioned you last time about the fact that you weren't going to run through a succession of attorneys until you found one that you particularly liked. We are going to trial tomorrow. You're going to trial tomorrow with [Manchak], is that clear?

(Tr. p. 64).

Because "that's not cool," Wilson asked the court "how you gonna force me to go to trial with this dude when he ain't even willing to fight for me?" (Tr. p. 64). Wilson requested the trial court to be allowed to proceed *pro se*. The trial court addressed the dangers of proceeding *pro se* and informed Wilson that he would be held to the same standards as an attorney. The court inquired about Wilson's experience with the legal

3

system, explained the proceedings, and verified his understanding of the stakes—that he could be facing "substantial periods of time at the department of correction." (Tr. p. 67). The trial court granted Wilson's request to conduct his trial *pro se* after warning Wilson again and after receiving assurances that Wilson was still determined to proceed. The trial court continued attorney Manchak's involvement as standby counsel.

On August 23 and 24, a jury trial was conducted. At the close of the evidence, the trial court found Wilson guilty as charged. At the September 19, 2011 sentencing hearing, the trial court imposed fifteen years for the burglary conviction, enhanced by fifteen years for the habitual offender adjudication and with five years of the sentence suspended to probation.

Wilson now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Wilson contends that the trial court abused its discretion when it appointed attorney Manchak as his standby counsel despite Wilson's lack of faith and trust in him. This appointment "clearly gave the jury the prejudicial impression that Wilson had at his disposal an attorney to assist him in his defense," yet he chose not to rely on him. (Appellant's Br. p. 5).

Wilson conceded that he did not object to the trial court's appointment of attorney Manchak. Generally, a contemporaneous objection is required to preserve an issue for appeal. *Staley v. State*, 896 N.E.2d 1245, 1248 (Ind. Ct. App. 2008), *trans. denied.* Seeking to avoid procedural default, Wilson urges us that his claim is not foreclosed because the trial court's appointment constituted fundamental error. The fundamental

4

error doctrine is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Id.*

A defendant charged with having committed a felony is allowed representation by counsel. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). An indigent defendant, however, does not have an absolute right to counsel of his own choosing. *State v. Irvin*, 291 N.E.2d 70, 74 (Ind. 1973). This is discretionary with the trial court and can be reviewed only for an abuse of discretion. *Id.* The services of an attorney appointed by the court may not be forced upon a pauper defendant, but if the defendant refuses to be represented by the appointed counsel, he must find some method to employ his own counsel or proceed in *propria persona*. *Id*. A defendant may not arbitrarily compel a court to discharge competent appointed counsel. *Id*.

Thus, a criminal defendant has a Sixth Amendment right to conduct his own defense if he "knowingly and intelligently forgoes his right to counsel" and he "is able and willing to abide by rules of procedure and courtroom protocol." *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). When a defendant demonstrates that he is competent to proceed *pro se*, he must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial. *McKaskle v. Wiggings*, 465 U.S. 168, 174, 104 S.Ct. 944, 949, 79 L.Ed.2d 122 (1984), *reh'g denied*. According to the Supreme Court, the policy underlying the right to appear *pro se* is to "affirm the dignity and autonomy of the

5

accused and to allow the presentation of what may, at least occasionally, be the accused's best defense." *Id*. at 176-77.

To determine whether a defendant's Sixth Amendment right to represent himself has been violated, "the primary focus must be on whether the defendant had a fair chance to present his case in his own way." *Id*. In the context of whether standby counsel interfered with a defendant's right to present his case in his own way, the Supreme Court explained:

> the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury. This is the core of the *Faretta* right. If standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak instead of the defendant on any matter of importance, the *Faretta* right is eroded.

*Id*. at 178.

Here, the trial court appointed defense counsel to represent Wilson as guaranteed by the Sixth Amendment. When Wilson became dissatisfied with his first counsel, the trial court appointed attorney Manchak to represent him. However, the day before his trial, Wilson expressed his concerns about his appointed counsel working for the State and moved to proceed *pro se*. After reviewing the record, it is clear that Wilson's complaints about attorney Manchak were vague and lacked specificity. The trial court afforded Wilson many opportunities to give detailed examples of his dissatisfaction and upon questioning attorney Manchak, the trial court found no merit in Wilson's concerns warranting alternate counsel. Rather, it is clear that Wilson's desire to change counsel again derived from his attorney's refusal to file motions Wilson deemed necessary and to

let him dictate litigation strategy. As our supreme court noted in *Duncan v. State*, 412 N.E.2d 770, 773 (Ind. 1980), "[a] defendant may not through a deliberate process of discharging retained or appointed counsel whenever his case is called for trial disrupt sound judicial administration by such delaying tactics."

Thus, presenting no evidence entitling him to alternate counsel, Wilson elected to proceed *pro se* and the trial court continued attorney Manchak as standby counsel. The record demonstrates that during trial, Wilson refused to conduct voir dire, examine witnesses, or present a defense, instead electing to respond to every question with "Defense rests." (Tr. p. 211). At no point did standby counsel interrupt, interfere with Wilson's chosen tactics, or control the proceedings.

Because the appointment of standby counsel is "an appropriate prophylactic device when a defendant assumes the burden of conducting his own defense," and attorney Manchak's conduct during the trial did not interfere with Wilson's tactical decisions—as disastrous as they were—we cannot say that the trial court made an error, let alone a fundamental error prejudicing Wilson's rights by continuing attorney Manchak as standby counsel. *See Jackson v. State*, 441 N.E.2d 29, 33 (Ind. Ct. App. 1982).[1]

---

[1] We note that is his appellate brief, Wilson relies on *Koehler v. State*, 499 N.E.2d 196 (Ind. 1986), as standing for the proposition that a new standby counsel should be appointed when a defendant is dissatisfied with his current counsel and decides to proceed *pro se*. We disagree. Rather, *Koehler* propones the situation where

> a defendant with standby counsel already at his side desires to turn over his defense under circumstances which do not disadvantage any of the other participants in the trial. A different result may be possible when the defendant does not have standby counsel prepared to assume representation without an interruption of the proceedings and the

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not commit fundamental error by appointing Wilson's former public defender as standby counsel when he elected to proceed *pro se*.

Affirmed.

VAIDIK, C. J. and MAY, J. concur

---

defendants' reassertion of his right to counsel does not occur at a natural break in the proceedings.

*Id*. at 200. In essence, *Koehler* represents a specific circumstance of hybrid representation.