## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 29 2016, 9:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John T. Wilson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of: D.W. and M.W. (Minor Children),

R.W. (Father),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

December 29, 2016

Court of Appeals Case No.
48A05-1603-JT-723

Appeal from the Madison Circuit Court

The Honorable G. George Pancol, Judge

Trial Court Cause Nos.
48C02-1405-JT-39 and
48C02-1405-JT-40

**Najam, Judge.**

# Statement of the Case

R.W. ("Father") appeals the trial court's termination of his parental rights over his minor children D.W. and M.W. (collectively "Children"). Father presents three issues for our review:

1.  Whether the State presented sufficient evidence to support the termination of his parental rights.

2.  Whether the trial court erred when it delayed entry of the judgment after the final termination hearing.

3.  Whether the trial court denied him his right to due process.

We affirm.

# Facts and Procedural History

Father and S.C. ("Mother") (collectively "Parents") have two children together, namely, M.W., born April 16, 2007, and D.W., born November 25, 2008.[1] On May 4, 2012, the Indiana Department of Child Services ("DCS") filed petitions alleging that Children were Children in Need of Services ("CHINS") due to Mother's substance abuse and her physical abuse of Children's half-sibling

---

[1] Mother's parental rights to the children were also terminated, but she does not participate in this appeal.

living with them.  Father was incarcerated at that time.  Following a fact-finding hearing, the trial court adjudicated the Children to be CHINS and the court ordered Father "to have no contact with the child[ren] until his release from prison, to participate in and successfully complete all available classes through the Indiana Department of Correction[] to develop and improve his parenting skills, and to immediately contact DCS upon his release from incarceration."  Appellant's App. at 24.

[4]  On May 28, 2014, DCS filed petitions to terminate the Parents' parental rights to the Children.  Following a hearing on August 26, the trial court took the matter under advisement.  And on September 29, the trial court "continue[d] Mother's portion [of the termination proceedings] for 180 days" and set the matter for review on February 24, 2015.  *Id.* at 3.  At a fact-finding hearing on February 24, Mother failed to appear, but Mother's attorney was present, and Father did not appear, either in person or by counsel.  On April 17, 2015, the trial court terminated Mother's parental rights to Children.[2]  And on March 1, 2016, the trial court terminated Father's parental rights to Children.  In support of its order, the trial court entered the following findings and conclusions:[3]

---

[2]  Mother had demonstrated good progress with her case plan until she had a relapse in March 2014.  Given that evidence, the trial court opted to continue the matter for 180 days with respect to the petitions DCS filed against Mother only.

[3]  The trial court issued separate orders for each child, but each order included the same findings and conclusions.

3.) On 5/4/12, a Child In Need of Services ("CHINS") Petition was filed under cause number 48C02-1205-JC-89, due to the biological mother having tested positive for illegal drugs, admitting to using other illegal drugs, and for one of the children in the home having bruising to that child's face from the child's mother hitting that child.

4.) On 5/23/12, an initial hearing was conducted on the CHINS petition, at which the mother and father were present. Counsel was appointed for both parents and the biological parents admitted to the allegations of the petition at this hearing and to the status of the child as a CHINS. The children remained in the home of the child's mother to this point in the CHINS proceedings.

5.) On 6/20/12, a disposition hearing was conducted on the CHINS petition, at which the father was present and represented by counsel. The child's father was in incarceration and had been from the outset of the CHINS proceedings. The child's father was ordered to have no contact with the child until his release from prison, to participate in and successfully complete all available classes through the Indiana Department of Corrections to develop and improve his parenting skills, and to immediately contact DCS upon his release from incarceration.

6.) On 7/31/12, the child and siblings were removed from the mother's home due to the mother being evicted from the family home and her related entrance to in-patient treatment for her ongoing substance abuse. The child's father remained in incarceration.

7.) At permanency and review hearings conducted on the CHINS petition on 5/15/13 and 11/20/13, the juvenile court found that the father had not complied with the child's case plan or fulfilled his parental obligations due to the father's continued

long-term incarceration, lack of participation in reunification services and lack of visitation with the child.

8.) On 5/28/14, a permanency hearing was conducted on the CHINS petition at which the juvenile court approved a permanency plan of termination of the parent-child relationship and adoption of the child due to the failure of the child's parents to fulfill their parental obligations to the child or remedy the child's CHINS condition.

9.) The child's father has multiple criminal case convictions and violations of probation during the child's life and during the pendency of the CHINS and termination matters:

> a. The child's father pled guilty under cause number 48C06-1401-FD-98 to possession of a controlled substance on 4/1/14 and was sentenced to extended incarceration as a result. This conviction occurred and the facts leading to the condition took place during the pendency of the CHINS case.

> b. The child's father committed additional criminal acts on 3/1/14 and was charged with possession of a controlled substance under cause number 48C06-l403-FD-405. He pled guilty to this charge on 4/1/14 as well. Again, the criminal activity took place during the pendency of the CHINS proceedings.

> c. The child's father had committed criminal acts in April of 2010, and was charged with three separate counts of dealing controlled substances as class B Felonies, under cause number 48D01-1004-FB-72. He pled guilty to all three counts on 10/5/10. There were multiple aggravating factors found by that

court, including prior juvenile and criminal history, that the father was on probation at the time he committed these new events, and that he had numerous arrests for resisting law enforcement, multiple contempt findings, and multiple failures to appear. He was sentenced to a term of 16 years' imprisonment, with 9 of those years suspended. On 12/11/13, he was permitted to participate in a re-entry program. On 1/8/14, he failed to appear for a hearing and a warrant was issued for his arrest. On 1/27/14, a violation of probation was filed. On 2/25/14, the father admitted to violating his probation by committing additional criminal acts (see subparagraph a. above). On 4/1/14, he admitted to committing the additional crimes described in subparagraph b. above. He was given an additional 7 years executed time on this cause of action as a result.

10.) The criminal activity detailed in paragraph 9.) above demonstrates that the child's father is not seriously attempting to fulfill his parental obligations. Instead, this career demonstrates that the child's father has chosen a life of criminal activity and drug seeking completely incompatible with being a parent. Much of his criminal record takes place during the very heart of the underlying CHINS proceedings for this child.

11.) The child's father was given multiple opportunities to participate in probation programs and improve his life and his ability to fulfill parental obligations. This included participation in a re-entry program that enabled the father to be at liberty and participate in reunification services if he so chose, beginning on 12/11/13. In less than a month (1/8/14), the child's father reverted to form and committed new criminal acts of illegal drug possession. He repeated this conduct in March of 2014. Despite

the opportunities given, the child's father abdicated any sense of responsibility to the child.

12.) The child's father's choices have deprived him of any meaningful participation in the child's life and have led to extended incarceration that will continue to interfere with his ability to interact with the child, even if he completely changed his pattern of conduct, which to date has not occurred.

13.) The child's father has not completed any reunification services or otherwise demonstrated that he has eliminated criminal conduct or drug abuse as his normal state.

14.) The father's lack of interest in this child's life, as demonstrated by the lack of participation in reunification services, lack of contact with the child, and conscious choice to pursue crime and drugs over and against a meaningful relationship with his child, constitutes clear and convincing evidence of the reasonable probability that the conditions which resulted in the removal of the child and reasons for the continued placement of the child outside the father's home will not be remedied, and that continuation of the Parent-child relationship poses a threat to the child's well-being.

15.) The same findings are now additionally made to support the finding that termination of the parent-child relationship is in the child's best interests.

16.) The child's CASA and the child's case manager from DCS testified that termination of the parent-child relationship would be in the child's best interests. The Court agrees with this opinion and now adopts this opinion as its own and finds it as a fact for purposes of these termination proceedings.

17.) There is a satisfactory plan for the permanency of the child, that being adoption.

18.) The Court now adopts each of the facts elicited above as its own findings upon due consideration of the testimony and evidence presented, and as individual bases for its judgment in this cause.

19.) Any matter enumerated above as a Finding of Fact which may be found as a Conclusion of Law is hereby deemed a Conclusion of Law.

CONCLUSIONS OF LAW

1.) The child is under the age of eighteen (18) years old.

2.) The Madison County Circuit Court 2 found the child to be a Child in Need of Services under cause number 48C02-1205-JC-89, in an Order on Fact Finding issued on 5/23/12.

3.) The child has been removed from the home of the biological father since 7/31/12 to the present, and been in Court-ordered placement since that date to the present. The biological father has not had the child in his care or custody since before the beginning of CHINS or termination proceedings.

4.) The child has been removed from the care and custody of the biological father under the terms of a dispositional decree for more than six (6) months.

5.) The Dispositional Order on the underlying CHINS Petition was issued on 6/20/12.

6.) There is a reasonable probability that the continuation of the parent-child relationship between the biological father and child poses a threat to the well-being of the child.

7.) There is a reasonable probability that the conditions that resulted in the child's removal from and continued placement outside the care and custody of the biological father will not be remedied.

8.) Termination of the parent-child relationship between the biological father and the minor child is in the best interests of the child.

9.) The plan of DCS for the care and treatment of the child, that being adoption of the child, is acceptable and satisfactory.

10.) Any matter enumerated above as a Conclusion of Law which may be found as a Finding of Fact is hereby deemed a Finding of Fact.

Appellant's App. at 24-27. This appeal ensued.

# Discussion and Decision

We begin our review of this appeal by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cty. Ofc. of Family & Children (In re K.S.)*, 750

N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> * * *
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child*

*Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[7] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cty. Ofc. of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cty. Ofc. of Family & Children (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[8] Here, in terminating Father's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cty. Ofc. of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

## Issue One: Sufficiency of the Evidence

[9] Father first contends that the trial court erred in concluding that he will not remedy the conditions that resulted in Children's removal; that the continuation of the parent-child relationships poses a threat to the well-being of Children; and that termination is in the best interests of Children. Because Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, we address only whether the trial court erred in concluding that continuation of the parent-child relationships poses a threat to Children and that termination is in Children's best interests.

### Continuation of the Parent-Child Relationship

[10] Father contends that the trial court's conclusion that continuation of the parent-child relationships would pose a threat to Children is not supported by the evidence. However, Father's arguments are simply requests that we reweigh the evidence, which we cannot do. *In re D.D.*, 804 N.E.2d at 265. Instead, we must determine whether the evidence most favorable to the judgment supports the trial court's conclusion. *Quillen*, 671 N.E.2d at 102. We hold that it does.

[11] The trial court's conclusion is supported by the evidence. Family Case Manager ("FCM") Talisha Glassburn testified that Father "has been incarcerated most of the children's li[ves] and will continue to be incarcerated for at least the next three and a half, four years," and she stated that she did "not feel that [Father] can provide for the children." Tr. at 56. This testimony

is supported by the uncontested fact that Father's criminal history dates back to 2009, with convictions related to possession and dealing in controlled substances. In its brief on appeal, DCS states that Father continues to be incarcerated, with an earliest possible release date of April 20, 2018. Father does not dispute that fact. Moreover, at the termination hearing, Father acknowledged that he has not been able to "[p]rovide as the father [Children] need" and that he is "not part of the solution right now" in light of his incarceration. *Id.* at 93.

[12] All of this evidence clearly supports the trial court's conclusion that continuation of the parent-child relationships would pose a threat to Children. A trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his physical, mental, and social growth is permanently impaired before terminating the parent-child relationship. *Shupperd v. Miami Cty. Div. of Family & Children (In re E.S.)*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002). When the evidence shows that the emotional and physical development of a child in need of services is threatened, termination of the parent-child relationship is appropriate. *Id.* Father clearly has a habitual pattern of criminal activity, incarceration, and substance abuse, and there is no evidence that those conditions are likely to change. Moreover, Father acknowledged that he had not been "there to help [his] kids" and had not been able to "provide as the father they need." Tr. at 93. There was no evidence that Father would be in a

position to care for Children in the future. The evidence shows that Children need permanency. The trial court's conclusion is not clearly erroneous.

### *Best Interests*

[13]    In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *A.S. v. Ind. Dep't. of Child Servs. (In re A.K.)*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests." *Castro v. State Ofc. of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and *the testimony of the service providers may support a finding that termination is in the child's best interests*." *In re A.K.*, 924 N.E.2d at 224 (emphasis added).

[14]    Again, on this issue, Father's contentions amount to a request that we reweigh the evidence, which we will not do. As the trial court found, both the FCM and the Court Appointed Special Advocate testified that termination of Father's parental rights is in the children's best interests. The totality of the evidence, including Father's historical inability to be a law-abiding citizen or to provide a safe and stable home, supports the trial court's conclusion that termination of Father's parental rights is in Children's best interests.

## Issue Two:  Delay of Final Judgment

Father next contends that the trial court erred when it "postponed its pronouncement of judgment pursuant to Indiana Code Section 31-35-2-8," Appellant's Br. at 17, which provides that if the court finds that the allegations in a petition to terminate parental rights are true, the court shall terminate the parent-child relationship.  Otherwise, if the court does not find that the allegations in the petition are true, the court shall dismiss the petition.  I.C. § 31-35-2-8.  In short, Father maintains that, when it did not either enter judgment on the petitions or dismiss the petitions within a certain time following the fact-finding hearing in August 2014, the trial court failed to comply with the statute and, therefore, the judgment is "clearly erroneous." Appellant's Br. at 18.  We cannot agree.

As DCS points out, following the August 2014 hearing, the trial court took the matter under advisement with respect to the petitions filed against Father. Without explanation, the trial court did not enter its judgment with respect to Father until March 1, 2016.  In support of his contention that that delay in entering judgment was clear error, Father cites *Bailey v. Dubois Cty. Dep't of Child Servs. (In re S.B.)*, 896 N.E.2d 1243, 1248 (Ind. Ct. App. 2008), where this court held that the trial court violated Indiana Code Section 31-35-2-8 when it "postpone[d] its pronouncement of judgment and g[a]ve Father one final chance despite its conclusion that DCS had already satisfied its burden of proof[.]"  But in *S.B.*, we also held that the error was harmless. *Id.*  Likewise,

here, if the trial court did err, that error was harmless given Father's continued incarceration and failure to show how he was harmed by the trial court's delay in entering judgment.

### Issue Three:  Due Process

Finally, Father contends that the trial court violated his right to due process both when it held a fact-finding hearing on February 24, 2015, in his absence and when it delayed entering final judgment until March 1, 2016.  We address each contention in turn.

When the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process.  *Z.G. v. Marion Cty. Ofc. of Family & Children (In re C.G.)*, 954 N.E.2d 910, 917 (Ind. 2011).  Due Process has never been defined, but the phrase embodies a requirement of "fundamental fairness."  *Id.*  "The U.S. Supreme Court has written that 'the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'"  *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

First, Father maintains that the February 24, 2015, hearing was "in essence a continuation of the Final Termination hearing" and he was "not given the opportunity to be heard[.]"  Appellant's Br. at 19.  Father acknowledges that a parent does not have a constitutional right to be physically present at a final termination hearing, but he asserts that Indiana Code Section 31-35-2-6.5(e)

requires the trial court to "provide to a parent an opportunity to be heard and make recommendations to the court at the hearing," which includes the right to submit a written statement to the court. And Father asserts that Indiana Code Section 31-32-2-3(b) provides that, in termination proceedings, a parent is entitled to cross-examine witnesses, obtain witnesses or tangible evidence, and introduce evidence. Thus, Father maintains that the trial court's denial of any opportunity for him to be heard violated his right to due process.

[20] However, as DCS points out, and as Father does not deny, Father had notice of the February 24, 2015, hearing and, in any event, that hearing only pertained to the petitions against Mother. At the beginning of the hearing, the trial court reiterated that he had taken the matter under advisement "to see how the Mother was going to do." Tr. at 126. The trial court then heard evidence only regarding Mother's lack of progress since the prior hearing and, at the conclusion of the February 24 hearing, the court stated as follows:

> At the last hearing, the Court had some hope and some question on whether or not the condition that resulted in the removal of the children could be remedied if the Mother got on track and got this criminal case behind her. She certainly hasn't done that. We've given her ample opportunity. The Court now does find that the termination is in the best interest of the child[ren].

*Id.* at 132.[4]  Because Father had notice of the hearing, and because the hearing did not pertain to DCS's petitions to terminate Father's parental rights, Father cannot show that he was denied his right to due process.

[21]  Father also contends that "the trial court's delay for over a year before entering the termination order was unreasonable" and violated his right to due process because it "was based upon evidence existing at the time of the hearing in August 2014 more than one and one-half (1 1/2) years from the date the order was entered on March 1, 2016." Appellant's Br. at 19-20.  In particular, Father maintains that it was fundamentally unfair for the trial court to enter judgment based on stale evidence "where there could be a change in circumstances which would require the petition for involuntary termination of parental rights be denied." *Id.* at 20.  But Father does not demonstrate what new evidence he would have presented to the trial court to show a change in circumstances between the August 2014 hearing and the March 2016 judgment.  In short, Father has not shown that he was harmed by the trial court's delay in terminating his parental rights.

---

[4]  Following that hearing, DCS submitted proposed findings and conclusions only with respect to its petitions against Mother.  Neither the parties nor the trial court prompted the court to enter judgment with respect to Father's parental rights until almost one year later.

Moreover, as DCS points out, Father was entitled under Trial Rule 53.2(A)[5] to move to withdraw the proceedings from the trial court and request that our supreme court appoint a special judge to rule on the petitions, but Father did not so move. While we agree with Father that the trial court's delay in entering judgment was unreasonable, because Father had an opportunity to move for a change of judge, he cannot demonstrate that he was denied his right to due process.

Affirmed.

Bailey, J., and May, J., concur.

---

[5] Trial Rule 53.2(A) provides: "Whenever a cause . . . has been tried to the court and taken under advisement by the judge, and the judge fails to determine any issue of law or fact within ninety (90) days, the . . . cause may be withdrawn from the trial judge and transferred to the Supreme Court for the appointment of a special judge."